FLORA FOLEY, administratrix, vs. BOSTON CONSOLIDATED GAS COMPANY.

Middlesex. March 7, 1955. — April 29, 1955.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Proximate Cause. Way,* Public: obstruction, nuisance. *Negligence,* Obstruction of way. *Nuisance.*

Evidence of the circumstances in which a boy was struck and killed by an automobile on a public street at or near a place where a gas company had dug a trench part way across the street and had placed wooden horses and parked a service trailer in the street left it conjectural whether such obstructions were a proximate cause of his being struck.

TORT. Writ in the Superior Court dated February 23, 1951.

The action was tried before *Beaudreau,* J.

*John Kimball, Jr.,* for the plaintiff.

*Robert W. Cornell, (Philip L. Berkeley* with him,) for the defendant.

WILLIAMS, J. This is an action of tort originally brought against two defendants, Sidney L. Wallerstein and Boston Consolidated Gas Company, to recover for the death of one Steven A. Foley, the plaintiff's intestate. It was not controverted that the intestate, who was a boy four and one half years old, died from injuries received on September 7, 1950, when struck by an automobile operated by Wallerstein on Charlesbank Road in Newton. The accident occurred opposite number 5, an apartment house where the intestate was staying, and near an excavation in the street made by the gas company under a permit of the street commissioner for the purpose of installing gas in the house. Counts in the declaration for conscious suffering against both defendants were waived, and an agreement for judgment was entered against Wallerstein on count 2, in which he was charged with negligent operation of the automobile. The trial proceeded against the gas company on counts 4 and 6 wherein it was alleged respectively that the company contributed to the death of the boy by negligently obstructing the street and by maintaining a nuisance. The case is here on the exception of the plaintiff to the allowance of a motion by the gas company that verdicts be directed on these counts.

At the place of the accident Charlesbank Road ran generally east and west and from photographs which were in evidence appears to have been sufficiently wide to accommodate two lines of traffic. The space in front of the apartment house which was located on the north side of the street was enclosed by a high wooden fence, to the east of which a cement walk led from the door of the house to the street. Westerly of the fence was a paved yard for automobiles, and between the southerly face of the fence and

the street was a strip of grass approximately four feet in width. There was no sidewalk, and to go from the street end of the walk to the yard without using the street a person would be obliged to walk on this strip of grass. On the morning of the accident the gas company had dug a trench between the walk and the fence from the house to a point six or seven feet into the street. It was a foot and one half deep and the excavated material was piled on the side. There was no passageway over the trench. Wooden horses were placed in the street, one to the east and three to the west of the trench. There was also a service trailer parked near the curb between the trench and the horse farthest west. The positions of the horses and trailer are shown on the photographs and on a copy of a sketch which had been used as a chalk at the trial.

There was evidence that the deceased left the house after breakfast by way of the described walk. About 8 A.M. one Tailby, a motorist, whose automobile was last in a line of traffic going east on Charlesbank Road, saw him standing in the street between the trailer and the horse to its west. "He appeared . . . to be waiting for the line of vehicles to pass by." Tailby observed the Wallerstein automobile approaching from the east, and after passing it glanced at his rear mirror. He saw that the automobile had struck the boy, who was then lying on the edge of the roadway west of the said horse. The Wallerstein automobile was coming to a stop a short distance beyond. One of the boy's shoes was later found in the street about ten feet west of the excavation and a few feet southeast of the place where Tailby had seen him standing. The other shoe was lying to the west of the body.

There was no other evidence as to how the boy came in contact with the automobile. Wallerstein did not testify. It is clear that the boy was not seeking to pass around the end of the trench which was a substantial distance to the east of him. Whether he was using the street to go west around the horse is conjectural. Compare *DeLeo* v. *Jefferson*, 331 Mass. 317. If as suggested by the plaintiff's coun-

sel he might have been going to a play yard west of the house where his brother was playing, there was sufficient space between the fence and the horse to enable him to proceed in that direction without going out into the street. What effect, if any, the obstructions in the street had upon his actions and those of the automobile operator is a matter of speculation. In our opinion it could not be found that they were a cause of the boy being struck. The evidence is insufficient to show that because of them he was influenced to leave a place of safety and proceed into one of danger. See *Smith* v. *Locke Coal Co.* 265 Mass. 524; *Gaw* v. *Hew Construction Co.* 300 Mass. 250; and *Jones* v. *Hayden,* 310 Mass. 90, where the *Smith* and *Gaw* cases are discussed. The case falls within the class illustrated by *Falk* v. *Finkelman,* 268 Mass. 524, and *Kelly* v. *Hathaway Bakeries, Inc.* 312 Mass. 297, where the obstruction of a public way by illegal parking was held to be a condition or circumstance rather than a contributing cause of a subsequent collision. With the issue of causation settled by our ruling (*McKenna* v. *Andreassi,* 292 Mass. 213, 217), there is no occasion to consider the further question as to the validity of the permit under which the gas company had made its excavation.

*Exceptions overruled.*